**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**February 3, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

MARLON ALONZO SMITH,

    Defendant - Appellant.

No. 18-4149
(D.C. No. 2:16-CR-00020-DN-1)
(D. Utah)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, Chief Judge, **HARTZ**, and **BACHARACH**, Circuit Judges.
_____

This case grew out of a traffic stop in a remote outpost in Utah. Mr. Marlon Smith, a black man, was stopped for speeding. When the police officer expressed suspicion that the car contained drugs, Mr. Smith peeled away. He was ultimately apprehended with a large quantity of methamphetamine in the car.

---

[*]    Oral argument would not materially help us to decide this appeal. We have therefore decided the appeal based on the briefs. _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).

    This order and judgment does not constitute binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. But the order and judgment may be cited for its persuasive value if otherwise appropriate. Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

The discovery of the drugs led to a conviction for possessing methamphetamine with the intent to distribute. 21 U.S.C. § 841(a)(1). Mr. Smith appeals the conviction, arguing that the government lacked sufficient evidence of guilt and presented unfairly prejudicial expert testimony by an unqualified witness. We reject these arguments and affirm the conviction.

## I.   The evidence of guilt was sufficient.

We first conclude that the evidence sufficed to convict on the charge of possessing methamphetamine with intent to distribute.

### A.   Test for Sufficiency of the Evidence

On appeal, Mr. Smith argues for the first time that the evidence of guilt was insufficient. Because he didn't raise this argument in district court, we review for plain error. *United States v. Kaufman*, 546 F.3d 1242, 1263 (10th Cir. 2008). But our test for plain error largely mirrors the test that we would ordinarily apply for sufficiency of the evidence. *United States v. Flanders*, 491 F.3d 1197, 1208 (10th Cir. 2007). When applying the test for sufficiency of the evidence, we view the evidence and reasonable inferences in the light most favorable to the government and determine whether a reasonable jury could find guilt beyond a reasonable doubt. *Kaufman*, 546 F.3d at 1263.

## B. Elements of the Offense

To make this determination, we consider the elements of the crime: (1) the defendant's possession of the methamphetamine, (2) the defendant's knowledge of the methamphetamine, and (3) the defendant's intent to distribute the methamphetamine while it was in his possession. *United States v. Pulido-Jacobo*, 377 F.3d 1124, 1131 (10th Cir. 2004). A reasonable jury could find all of these elements.

### 1. Possession

Possession may be actual or constructive. *United States v. Hooks*, 780 F.3d 1526, 1531 (10th Cir. 1986). The possession is actual when the defendant knowingly has direct physical control. *United States v. Turner*, 553 F.3d 1337, 1343 (10th Cir. 2009).

The factfinder could reasonably infer that Mr. Smith had direct physical control of the methamphetamine because (1) he was the only person in the vehicle and (2) he claimed to be driving cross-country in his own rental car. Given these circumstances, the factfinder had little reason to believe that the methamphetamine was someone else's. *See Pulido-Jacobo*, 377 F.3d at 1130 (stating that the factfinder can "infer that the driver of a vehicle has knowledge of the contraband within it").

### 2. Knowledge

The factfinder could also reasonably find that Mr. Smith had known about the methamphetamine and had concealed it under the carpet in the

3

car. The carpet was missing a rivet, and Mr. Smith had a tool in his luggage that would remove rivets. The jury could thus reasonably infer that Mr. Smith had knowingly possessed the methamphetamine.[1]

Mr. Smith denies knowledge of the methamphetamine and alleges that the police officers planted the drugs out of anger for the car-chase. But why did Mr. Smith flee? He insists that as a black man, he feared being stopped by two white police officers in an unpopulated area. But as Mr. Smith neared a town, he turned around and led the police in a high-speed chase back into a deserted area. Speeding away from the town suggests that Mr. Smith was trying to evade capture rather than surrender peacefully in a populated area.

In any event, the jury needn't have believed Mr. Smith's explanation for fleeing and could instead have believed that he fled because he knew that he had methamphetamine inside his car. *See United States v. Ibarra-Diaz*, 805 F.3d 908, 934 (10th Cir. 2015) (concluding that the defendant's flight from the scene supported a reasonable inference of the defendant's knowledge and culpability relating to the drugs found inside the car). And irrespective of why Mr. Smith had fled, the factfinder could reasonably reject this allegation that the officers had planted the drugs.

---

[1] The methamphetamine had been wrapped in the same material used in a box addressed to Mr. Smith.

4

### 3.    Intent to Distribute

The jury could also reasonably infer that Mr. Smith had intended to distribute the methamphetamine. The 1178 grams of methamphetamine had a street value ranging from about $90,000 to over $124,000. The high value of the methamphetamine supports an inference of intent to distribute. *United States v. Powell*, 982 F.2d 1422, 1430 (10th Cir. 1992). In addition, an expert witness testified that Mr. Smith's text messages had reflected arrangements to get the methamphetamine and transport it for distribution. *See* Part 2, below.

* * *

The factfinder could reasonably infer that Mr. Smith had knowingly possessed the methamphetamine with the intent to distribute. We thus reject Mr. Smith's challenge to the sufficiency of the evidence.

## II.    The district court did not err in permitting the government's expert witness to testify about the meaning of text messages.

The government's evidence included expert testimony by a DEA agent about the meaning of text messages between Mr. Smith and someone named "Teddy." The expert witness opined that the text messages related to Mr. Smith's arrangements to obtain the methamphetamine.

Mr. Smith argues on appeal that the district court erred in allowing the testimony because (1) the police officer lacked the necessary

5

qualifications as an expert witness and (2) the testimony was unfairly prejudicial. We reject both arguments.

We review the challenge to the expert witness's qualifications only to determine whether the district court clearly abused its discretion. *United States v. Zamora*, 784 F.2d 1025, 1028 (10th Cir. 1986). According to Mr. Smith, the agent lacked enough education in linguistics to qualify as an expert witness. But "qualification as an expert witness may come from experience as well as education." Fed. R. Evid. 702, advisory committee's note (2000). The agent testified that she had served in law enforcement for roughly twenty years, had received extensive training, and had read thousands of line sheets from recorded drug calls. Based on this experience, she testified that she had developed a familiarity with code words for drugs. Given this experience, the district court acted within its discretion in regarding the witness as an expert qualified to give opinion testimony about the meaning of the text messages. *See, e.g.*, *United States v. Duran*, 941 F.3d 435, 451 (10th Cir. 2019) (upholding the introduction of expert testimony involving the use of coded language in drug transactions based on a law-enforcement agent's experience in drug-trafficking cases).

Mr. Smith also argues that the expert testimony was unfairly prejudicial. But Mr. Smith didn't make this argument in district court. We thus consider only whether the ruling reflected plain error. *United States v.*

*Brooks*, 736 F.3d 921, 929-30 (10th Cir. 2013). An error is "plain" only if it was obvious. *United States v. Rufai*, 732 F.3d 1175, 1189 (10th Cir. 2013).

We need not decide whether the district court erred. Even if it did, an error would not have been obvious in light of our prior holdings and the sparsity of Mr. Smith's argument: We've "repeatedly held" that expert testimony can help a jury to understand the terminology in drug transactions, *United States v. Quintana*, 70 F.3d 1167, 1170–71 (10th Cir. 1995), and Mr. Smith does not explain why the expert testimony was unfairly prejudicial.

## III. Conclusion

We affirm. The evidence of guilt was sufficient, and the district court did not abuse its discretion in allowing the expert testimony.

Entered for the Court

Robert E. Bacharach
Circuit Judge